# CASE NO. 24-2164

## IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

JOHN MEDAGLIA, III,
*Plaintiff-Appellant*,

v.

ALLENDALE POLICE DEPT.; CHIEF WIGGINS, a/k/a Lawrence Wiggins,
*Defendants-Appellees*.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT AIKEN

**INFORMAL RESPONSE BRIEF OF APPELLEES**

                E. Mitchell Griffith
                Michael D. Freeman
                Kelly D. Dean
                GRIFFITH, FREEMAN & LIIPFERT, LLC
                600 Monson Street
                Beaufort, SC 29902
                843-521-4242
                mgriffith@griffithfreeman.com
                mfreeman@griffithfreeman.com
                kdean@griffithfreeman.com
                *Counsel for Appellees*

Pursuant to Local Rule 34(b) of the Federal Rules of Appellate Procedure, Defendants Allendale Police Dept. and Chief Wiggins hereby submit their Informal Response Brief.

## STATEMENT OF ISSUES

I. Medaglia's argument that an arrest of a private citizen for trespass on public or quasi-public property is unlawful is not preserved for appeal.

II. The district court correctly concluded that the post office had a posted policy against disturbances and a reasonable officer would perceive that probable cause existed to arrest the appellant.

## STATEMENT OF CASE

### I. Procedural History and Ruling Presented for Review

On February 1, 2024, the Appellant filed this lawsuit in the U.S. District Court, District of South Carolina, Aiken Division against the Allendale Police Department and "Chief Wiggins" a/k/a Lawrence Wiggins ("Wiggins") asserting violations of his U.S. Constitutional rights under the First and Fourth Amendments pursuant to 42 U.S.C. § 1983 stemming from his November 7, 2023 arrest in the Town of Allendale, South Carolina. On July 15, 2024, the Appellees/Defendants filed a Motion for Summary Judgment as to all causes of action in the Complaint. On August 23, 2024, the U.S. Magistrate issued a Report and Recommendation recommending the granting of Appellee/Defendant's motion. The U.S. District Court Judge adopted the Magistrate's Report and Recommendation and granted summary judgment as to all causes of action on November 5, 2024. This appeal follows.

### II. Relevant Facts

This case arises out of an incident that occurred on November 7, 2023, at the post office

in the Town of Allendale, South Carolina. Appellant's Complaint alleged in full as follows:

> On 11-07-23, I (plaintiff) was in the public area of the post office at 315 Augusta Hwy filming my transaction when the defendant subsequently arrested me for expressing my first amendment rights and took my ID after refusing to identify myself, then he took me outside against my will to arrest and book me.
>
> I ask the court to grant me $400,00 for all punitive damages for the alleged violations as well as intentional infliction of emotional distress. I would also like a written official apology from the defendant regarding said violations.

ECF No. 1 at 5 (errors in original, minor edits made per ECF No. 28, Magistrate's Report and Recommendation). Appellant is a self-styled "First Amendment auditor" and maintains a YouTube channel he has entitled "First Amendment Protection Agency" or "FAPA" through which posts videos of his interactions. Appellant purports to perform "first amendment audits" on municipalities and at public buildings.

In reviewing the Motion for Summary Judgment, the U.S. Magistrate Judge made the following factual summary, which the Appellees adopt in full:

> […] Defendants have submitted the following undisputed evidence: On November 7, 2023, Plaintiff visited the post office in Allendale, South Carolina, to record a video to be placed on his YouTube channel. [ECF No. 22-1 at 0:13]. Plaintiff testified the video contains all "pertinent" interactions relative to that visit. [ECF No. 22-3 32:8–33:3].
>
> Plaintiff's video begins with him walking into the post office, waiting near the boxes, and then filming a closeup of Poster 7, which states the following:
>
>> Photographs for news purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when used for public meetings except where prohibited by official signs or Security Force personnel or other authorized personnel or federal court order or rule. Other photographs may be taken only with permission of the local Postmaster or installation head.
>
> [ECF No. 22-1 at 0:27–1:11, see also ECF No. 22-2].

Although not featured in the closeup by Plaintiff, Poster 7 also contains a specific restriction on disturbances:

> Disturbances
> Disorderly conduct, or conduct that creates loud and unusual noise, or which impedes entrance to or departure from Post Offices™ or otherwise obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public or employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on Postal Service property, is prohibited.

[ECF No. 22-2].

After viewing Poster 7, Plaintiff opens the entry doors to the post office, interacts with Sherri, who identifies herself as the officer in charge ("OIC") that day. [ECF No. 22-1 at 1:14–3:05]. At this point, there are no others in the room, and Plaintiff proceeds to purchase one stamp and briefly discuss Poster 7 with Sherri. See *id*. After completing his transaction, Plaintiff does not exit the post office, but instead stands in a corner facing the entry doors. *Id*. at 3:06. Red typeface appears on the screen: "I was about to head out after thinking no one was gonna say a word but I knew things were gonna go downhill when this clown showed up . . ." *Id*.

A black male ("the Customer") walks through the entry doors, and Plaintiff immediately engages him. *Id*. at 3:13–3:16. Upon seeing Plaintiff pointing a phone camera at him, the Customer tells Plaintiff that he needs permission to take pictures of him, and Plaintiff responds, "No, I don't." *Id*. at 3:17–3:24. The Customer then turns his back on Plaintiff, approaches the counter, and asks Sherri, "What's wrong with this crazy guy in here?" *Id*. at 3:24–3:26. Sherri responds that she does not know, and they have a brief exchange during which the Customer remarks that the "crazy guy" cannot be taking pictures of him, and Sherri indicates she needs "to call somebody" about Plaintiff. *Id*. at 3:27–3:58. The Customer then stands at the counter while he waits for Sherri to go in the back. *Id*. at 3:58–4:26.

The Customer remarks to another customer, "I don't know what he's doing," and he and Plaintiff have an exchange about what he "can and cannot do." *Id*. at 4:26–4:57. There is silence for a few seconds, until Plaintiff reengages the Customer: "Walk in here, cause a disturbance and call me a crazy guy." Id. at 5:05–5:07. The Customer turns around and asks, "What disturbance I got?" and there is another heated exchange. *Id*. at 5:08–5:38. After a few seconds of silence, Plaintiff

remarks out loud, "Oh boy, Sherri, this was going a lot better in the beginning." *Id*. at 5:44–5:48.

At this point, there is another heated exchange:

> Customer: You gotta let people know what you're doing.
> Plaintiff: No, I don't.
> Customer: Ok. I guarantee you do. In this post office.
> Plaintiff: No, I guarantee you I don't.
> Customer: Ok.
> Plaintiff: If you'd like, you can stick around for a free education, maybe the cops are coming, I don't know.
> Customer: I don't need an education from you.
> Plaintiff: Oh, it's not gonna be from me. It'll be from the cops that come.
> Customer: I don't need no education from you.
> Plaintiff: Maybe, uh, maybe you didn't hear me. I said it will be the—
> Customer: Maybe you didn't hear me, what I say.
> Plaintiff: Yeah? What did you say?
> Customer: Why are you talking to me?
> Plaintiff: [snickers]
> Customer: Yeah, you the smart one.
> Plaintiff: Yeah, I know. And you seem to be the dumb one.
> Customer: Call me dumb again. Call me dumb again. Call me dumb again.

*Id*. at 5:48–6:32. During this exchange, the Customer moves close to Plaintiff's camera. He then turns his back on Plaintiff and returns to the counter. *Id*. at 6:36–6:38. Plaintiff continues loudly chewing gum, which can be heard at various times throughout the video. See *id*.

With the Customer's back to Plaintiff, there is another period of brief silence during which Sherri can be heard making a call about a "situation in the lobby." *Id*. at 6:38–7:08. Plaintiff then remarks, ostensibly to his viewers, "Well, this started off a lot better guys. We were about to have a very nice, cordial conversation with Sherri, but, uh, now this has turned to a different situation. And, as you guys know, these things change quick, so . . ." *Id*. at 7:08–7:27.

Another customer then enters the post office and exchanges pleasantries with the Customer. *Id*. at 7:33–7:41. Plaintiff tells her, "Be careful, I wouldn't take your phone out, this guy's gonna get in your face." *Id*. at 7:48–8:00. The Customer tells him, "Keep being smart. And you're gonna get what's coming to you. I guarantee

you that." *Id*. at 8:00–8:10. Plaintiff then remarks out loud that Sherri has called 911 and then chuckles. *Id*. at 8:30–8:34. Plaintiff says, "Good, maybe this guy will learn something." *Id*. at 8:37–8:41.

Sherri returns and the Customer continues his transaction. *Id*. at 9:26–9:40. Red typeface appears on the screen: "Here comes the uninformed feelings enforcement . . . ANOTHER CHIEF TOO!!! It seems as though SC has an amazing way to choose/train their chiefs lmfaooo." *Id*. at 9:40. Wiggins walks into the post office. Id. at 10:00. Sherri tells Wiggins that Plaintiff has been recording and the Customer did not want to be recorded. *Id*. at 10:00–10:17. A dialogue ensues, in which Plaintiff continues to taunt the Customer. *Id*. at 10:17–10:40. Wiggins explains, "If you want him gone, you can ask him to leave," at which point Sherri, as OIC, asks Plaintiff to leave. *Id*. at 10:40–11:36.

Wiggins tells Plaintiff that he can leave or be arrested for trespassing. *Id*. at 11:45–11:58. Plaintiff chooses to stay, argues with Wiggins, repeatedly telling Wiggins to call his supervisor, and is subsequently arrested. *Id*. at 11:58–12:45. Red typeface appears on the screen, "Although this chief treated me with complete disrespect and total indifference to my basic god given rights . . . I was treated with the utmost repsect [sic] back at the station!!! Shoutout to my man Big Smokey!!" *Id*. at 12:45.

(ECF No. 28, pg. 3-8)(footnotes omitted).

## ARGUMENT

Appellant has raised a single issue on appeal, specifically that the District Court erred in determining that a reasonable law enforcement officer would believe probable cause existed to arrest the appellant. In support of this contention, the appellant cites a 1970 case from the South Carolina Supreme Court interpreting a statute that existed prior to South Carolina's adoption of its current Code of Laws in 1976, for the proposition that the crime of trespass does not apply to public buildings. Appellant's conclusion therefore is that he should not have been arrested at the Allendale Post Office because he could not have been trespassing.

I. **Medaglia's argument that an arrest of a private citizen for trespass on public or quasi-public property is unlawful is not preserved for appeal.**

The appellant raises this argument for the first time in this appeal. No reference was made to any South Carolina statute, and the issue was not raised or argued before the District Court. As the District Court pointed out, only three objections were raised to the Magistrate's Report and Recommendation: first, that the Magistrate Judge incorrectly interpreted the definition of the word "press"; second, that he was found not guilty on all charges stemming from the incident at issue in this case; and third, that the Magistrate Judge failed to adequately consider critical evidence, specifically that there was, as characterized by the appellant, "no real investigation [by law enforcement] into what actually happened" during the incident.

At no point during this case has the appellant alleged the (erroneous) conclusion that South Carolina does not recognize the crime of trespass on public property. "Arguments raised in a trial court must be specific and in line with those raised on appeal. 'To preserve an issue for appeal, an objection [or argument] must be timely and state the grounds on which it is based.'" United States v. Lavabit, LLC (In re Under Seal), 749 F.3d 276, 287 (4th Cir. 2014)(internal citations omitted). It follows then that "an objection on one ground does not preserve objections based on different grounds." Id. citing United States v. Massenburg, 564 F.3d 337, 342 n.2 (4th Cir. 2009). "Similarly, a party does not go far enough by raising a non-specific objection or claim. '[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court.'" Id. citing Dallas Gas Partners, L.P. v. Prospect Energy Corp., 733 F.3d 148, 157 (5th Cir. 2013); and United States v. Bennett, 698 F.3d 194, 199 (4th Cir. 2012) (finding defendant waived argument where his argument below was "too general to alert the district court to the specific [objection]"). Furthermore, "[a]lthough pro se complaints [and arguments] are to be liberally construed, the failure to first present claims to the district court generally forecloses our consideration of these

matters on appeal." Id. at 290.

## II. The district court correctly concluded that the post office had a posted policy against disturbances and a reasonable officer would perceive that probable cause existed to arrest the appellant.

The appellant appears to argue that South Carolina law does not recognize the crime of trespass on public property and therefore the District Court made some error of law regarding the conclusion that his Fourth Amendment claims were barred by the existence of probable cause. While it is true that S.C. Code § 16-11-620 specifically refers to dwellings, places of business and "premises of another person," the property at issue in this case is a federal post office. As the courts of the United States have repeatedly recognized, there is "[n]othing in the United States Constitution, [including the first amendment], [that] prevents a public entity, be it state or local, from even-handed enforcement of a general trespass law, vis-vis, public property." See *People v. Wigginton*, 2024 IL App (4th) 230285-U, citing *City of Joliet v. Franklin*, 244 Ill. App. 3d 418, 422, 613 N.E.2d 766, 184 Ill. Dec. 449 (1993) (citing *Adderley v. Florida*, 385 U.S. 39, 87 S. Ct. 242, 17 L. Ed. 2d 149 (1966)). Further, "[a] public entity, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley,* 385 U.S. at 47. The government need not permit free speech activities on all property. It can consider the nature of the property and the disruption which might be caused by the speaker's activities. *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 799-800, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)."

Appellant has not offered any evidence about whether the post office site in the Town of Allendale where this incident took place is owned by a governmental entity or if it is privately owned and leased to the government. Regardless, the post office maintains the power to regulate

access to its property in the same manner as a private owner, and the statutes of South Carolina repeatedly address the concept of trespass upon public property. (See e.g. S.C. Code § 16-11-530, 16-11-625, 16-11-630). Regardless, as the Magistrate Judge recognized, from the point of view of a reasonable officer, the record shows that the [appellant] was attempting to create a disturbance. (ECF No. 28 *fn 4).

Thus, the issue raised by the appellant therefore is ultimately one of probable cause for a warrantless arrest, which the Magistrate Judge and District Court thoroughly examined. As the District Court correctly pointed out, the appellant was arrested after refusing to leave the post office upon request by the Officer in Charge ("OIC"), for causing a disturbance at the Allendale Post Office by impeding, confronting and disturbing people in the conduct of normal postal business. The District Court noted the undisputed evidence that the post office had a clearly posted policy against disturbances, and that a reasonable officer, in light of the outrageous behavior of the appellant, would perceive that the appellant repeatedly attempted to create a disturbance. The Magistrate Judge further determined that the Plaintiff failed to introduce any evidence that an objectively reasonable officer lacked probable cause to arrest in on the undisputed facts of the case and therefore the officer was entitled to qualified immunity. (ECF No. 28 at 12-13). The Magistrate Judge and District Court both cited the language clearly posted on the date in question at the post office on "Poster 7" regarding the rules and regulations governing conduct on postal service property. The rules are further codified and found at 39 CFR § 232.1 entitled "Conduct on postal property" and specifically prohibit conduct which "tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property[.]" 39 CFR § 232.1(e). The Code also discusses enforcement of these restrictions by

state and local law enforcement.

The Magistrate Judge and District Court correctly concluded that probable cause existed for the arrest of the appellant due to his behavior at the post office, which impeded staff and customers from conducting regular postal business. As the Court recognized, claims under the First and Fourth Amendments for retaliation and unreasonable search and seizure fail as a matter of law in the face of probable cause. Based upon that reasoning, summary judgment was properly granted in this case, and this appeal should be denied.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal and affirm the district court's Order granting summary judgment.


Respectfully submitted,

GRIFFITH, FREEMAN & LIIPFERT, LLC

By:　　*s/ E. Mitchell Griffith*
E. Mitchell Griffith (Fed. ID #2469)
Michael D. Freeman (Fed. ID #9402)
Kelly D. Dean (Fed. ID #10109)
600 Monson Street
PO Drawer 570
Beaufort, SC 29901
843-521-4242
mgriffith@griffithfreeman.com
mfreeman@griffithfreeman.com
kdean@griffithfreeman.com
ATTORNEYS FOR APPELLEES

December 30, 2024
Beaufort, South Carolina